Joseph M. Conroy, J.
Motion by plaintiffs for a temporary injunction.
On May 15,1956 the Dining Boom Employees Union, Local 1, AFL-CIO (hereinafter referred to as Local 1), held an election for three labor chiefs. Six members were nominated: Sagi, Click and Thier, by the administration, so to speak; and Holmes, Perlman and Zacharias, by the opposition. The names of the administration candidates appeared on Line “A” of the voting machines, those of the opposition appeared on Line “B”. On the morning of May 14, 1956, the day preceding the election, Sagi died. Demand was made that his name be removed from the voting machines. At a meeting held on the morning of May 15th the elections committee of Local 1 (see by-laws, art. XXVI, § 3 [e]) decided to act in accordance with section 141 of the Election Law of this State and that, accordingly, Sagi’s name was to remain. The election was held and the membership, with knowledge of Sagi’s death, voted as follows: Sagi, 4,846; Glick, 4,939; Thier, 4,690; Holmes, 2,145; Perlman, 2,293; Zacharias, 2,385. Thereafter, acting under sections 1 and 2 of article XXVII of the by-laws, the executive board of Local 1 appointed a replacement, which action was unanimously approved at the next general membership meeting.
Plaintiffs have exhausted their remedies within the union and now look to this court for relief. They contend that the 4,846 votes cast for Sagi, a dead man, with knowledge that he was *57 dead, Avere as so many blanks and that such being the case plaintiff Zacharias received the third highest number of votes (2,385) and was elected.
With that contention this court cannot agree. There Avas no provision, either in the International constitution or in the by-laws of Local 1, to cover the situation Avhich developed here. It Avas too late to postpone the election for the purpose of nominating another candidate since 10 days’ notice was required (by-laAvs, art. XXVI, § 7). To have removed Sagi’s name from the A’oting machines Avould have been to elect one of the opposition candidates by default. It AAras proper, therefore, for the elections committee to turn to the laAv of this State covering such a situation in the case of public elections, to Avit, section 141 of the Election LaAv. Whatever the laAv may have been prior to the enactment of that statute (see People ex rel. Furman v. Clute, 50 N. Y. 451, 461), since that time votes east for a dead candidate are not invalid in all cases. Section 141 provides: ‘ ‘ If a vacancy shall occur in a nomination, caused by death of the candidate subsequent to noon of the Tuesday before a general or special election and prior to the closing of the polls on such election day, and such vacancy shall not be filled as provided by this chapter, the votes cast for such deceased candidate shall be cairvassed and counted, and if he shall receive a plurality of the Azotes cast, a ATacancy shall exist in the office for which such nomination Avas made to be filled in the manner provided by laAv for vacancies in office occurring by reason of death after election. ’ ’
Applying the rationale of that statute to the case at bar, as this court deems proper, it follows that effect is to be given to the votes cast for Sagi, which constituted “ a plurality of the votes cast ’ ’, and to the procedure thereafter followed to fill the vacancy in office.
But even if section 141 of the Election Law were to be held inapplicable, it seems that the same result should follow. The membership of Local 1 either had or must be presumed to have had knoAvledge of article XXVII of its by-laws dealing with vacancies in office and the procedure for filling them. It would seem reasonable, therefore, to say that those members who voted for Sagi, though they knew him to be dead, did so knoAving that if he received sufficient votes to be one of the top three candidates voted for, such members (indeed, all members) would have a voice in the selection of his successor. (By-laws, art. XXVII, § 2.) Such an interpretation of intent more fairly and more realistically accords with the action of that significantly large number of members who voted for Sagi than would an *58 interpretation that they voted for him deliberately intending to waste their votes and in effect disenfranchising themselves. (Cf. People ex rel. Furman v. Clute, 50 N. Y. 451, 466, supra.) The motion is accordingly denied.
Submit order.